# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

## Civil Appeal Docket No. 25-692

ETHAN D. SMITH, and
JENNIFER L. DEES,

                Plaintiffs-Appellants,

FISHER et al.,

                Defendants-Appellees.

---

On Appeal from the United States District Court
for the Northern District of New York
Hon. Judge Mae A. D'Agostino

---

# APPELLANTS OPENING APPEAL BRIEF

---

Dated: May 19, 2025

| | |
|---|---|
| Jennifer L. Dees | Ethan D. Smith |
| Sui-Juris Litigant | Pro-Se Litigant |
| 16 Grant Hill Rd | 16 Grant Hill Rd |
| Clifton Park, NY 12065 | Clifton Park, NY 12065 |
| Mommabearjenny@gmail.com | Ethan.Smith@gmail.com |
| 720-799-6190 | 518-817-7718 |

# TABLE OF CONTENTS

|  | Page |
|---|---|
| JURISDICTION | 1 |
| STATEMENT OF ISSUES | 2-3 |
| STATEMENT OF THE CASE | 3-19 |
|     A. Procedural History | 10-14 |
|     B. Post Appeal Procedural Irregularities & Conflicts | 14-19 |
| ARGUMENTS | 20-48 |

I. THE DISTRICT COURTS USE OF ABSTENTION DOCTRINE TO DENY RELIEF WAS LEGALLY ERRONEOUS — 20-38

    A. The Domestic Relations Exception Does Not Apply — 20-23
    B. Younger Abstention is Inapplicable — 23-30
    C. The Rooker-Feldman Doctrine is Inapplicable — 30-32
    D. Judicial Immunity is Inapplicable — 32-34
    E. Quasi Judicial Immunity is Inapplicable — 35-38
    F. Immunity Does Not Bar Prospective Relief — 38-39

II. THE DISTRICT COURTS TEXT ONLY DENIAL AND FAILURE TO ADJUDICATE THE PRELIM. INJUNCTION VIOLATED RULES 65(d), 52(a), AND DUE PROCESS — 39-42

III. THE SUA SPONTE DISMISSALS OF THE RULE 60(b) AND RECUSAL MOTIONS VIOLATED THE FEDERAL AND LOCAL RULES AND DUE PROCESS — 42-44

IV. THE DISTRICT COURTS FAILURE TO ENFORCE RULE 26(f) OBLIGATIONS OBSTRUCTED DISCOVERY & DENIED ACCESS TO CRUCIAL EVIDENCE — 44-47

V. THE CUMULATIVE STRUCTURAL FAILURES REQUIRE VACATUR AND REMAND TO IMPARTIAL FORUM — 47-48

|  | Page |
|---|---|
| PRAYERS FOR RELIEF | 48 |
| CERTIFICATE OF COMPLIANCE | 50 |
| CERTIFICATE OF SERVICE | 51 |

## **TABLE OF AUTHORITIES**

### **United States Supreme Court Case Law**

| | |
|---|---|
| Ankenbrandt v. Richards, 504 U.S. 689 (1992) | 21 |
| Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) | 20 |
| Blessing v. Freestone, 520 U.S. 329 (1997) | 19 |
| Bradley v. Fisher, 80 U.S. 335 (1872) | 33 |
| Butz v. Economou, 438 U.S. 478 (1978) | 35, 38 |
| Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009) | 1, 2, 43 |
| Carson v. American Brands, Inc., 450 U.S. 79 (1981) | 1 |
| Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949) | 1 |
| Dennis v. Sparks, 449 U.S. 24 (1980) | 34 |
| Edelman v. Jordan, 415 U.S. 651 (1974) | 29 |
| England v. Louisiana State Bd. of Med. Exam'rs, 375 U.S. 411 (1964) | 23 |
| Ex parte Young, 209 U.S. 123 (1908) | 3, 29, 32, 38 |
| Foman v. Davis, 371 U.S. 178 (1962) | 42 |
| Gibson v. Berryhill, 411 U.S. 564 (1973) | 25 |

| **United States Supreme Court Case Law** | **Page** |
|---|---|
| Gunn v. Univ. Comm. to End War in Viet Nam, | 41 |
| 399 U.S. 383 (1970) | 41 |
| Hutto v. Finney, 437 U.S. 678 (1978) | 29 |
| In re Murchison, 349 U.S. 133 (1955) | 43 |
| Johnson v. De Grandy, 512 U.S. 997 (1994) | 32 |
| LaChance v. Erickson, 522 U.S. 262 (1998) | 43 |
| Lance v. Dennis, 546 U.S. 459 (2006) | 32 |
| Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847 (1988) | 2, 39, 43 |
| Liteky v. United States, 510 U.S. 540 (1994) | 43 |
| Marshall v. Marshall, 547 U.S. 293 (2006) | 21 |
| Mathews v. Eldridge, 424 U.S. 319 (1976) | 41 |
| Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982) | 24 |
| Mireles v. Waco, 502 U.S. 9 (1991) | 33 |
| New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350 (1989) | 24 |
| Nken v. Holder, 556 U.S. 418 (2009) | 41 |
| Pulliam v. Allen, 466 U.S. 522 (1984) | 30, 38 |
| Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996) | 30 |
| Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63 (2020) | 41 |

| **United States Supreme Court Case Law** | **Page** |
|---|---|
| Schmidt v. Lessard, 414 U.S. 473 (1974) | 40 |
| Skinner v. Switzer, 562 U.S. 521 (2011) | 31 |
| Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013) | 24 |
| Stump v. Sparkman, 435 U.S. 349 (1978) | 33, 34 |
| Winter v. NRDC, 555 U.S. 7 (2008) | 40 |

| **Second Circuit Court of Appeals Case Law** | **Page** |
|---|---|
| Clarkson Co. v. Shaheen, 544 F.2d 624 (2d Cir. 1976) | 40 |
| Dees v. Knox 24-1574 | 8, 20 |
| Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191 (2d Cir. 2002) | 25 |
| Dorce v. City of New York, 2 F.4th 82 (2d Cir. 2021) | 32 |
| Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196 (2d Cir. 2003) | 36 |
| Fulton v. Goord, 591 F.3d 37 (2d Cir. 2009) | 32 |
| Green v. Mattingly, 806 F.3d 664 (2d Cir. 2015) | 32 |
| Gross v. Rell, 585 F.3d 72 (2d Cir. 2009) | 33, 35 |
| Henrietta D. v. Giuliani, 246 F.3d 176 (2d Cir. 2001) | 41 |
| Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77 (2d Cir. 2005) | 31 |
| Hunter v. McMahon, 75 F.4th 62 (2d Cir. 2023) | 32 |
| In re Aguinda, 241 F.3d 194 (2d Cir. 2001) | 24 |
| In re IBM Corp., 45 F.3d 641 (2d Cir. 1995) | 43 |

**Second Circuit Court of Appeals Case Law**      **Page**

Int'l Star Class Yacht Racing Ass'n v. Tommy
Hilfiger U.S.A., Inc., 146 F.3d 66 (2d Cir. 1998)      20

Kirschner v. Klemons, 225 F.3d 227 (2d Cir. 2000)      25

Maestri v. Jutkofsky, 860 F.2d 50 (2d Cir. 1988)      33

Paddington Corp. v. Attiki Imps. & Distribs.,
996 F.2d 577 (2d Cir. 1993)      43

Reich, United States v., 479 F.3d 179 (2d Cir. 2007)      19

Rooney, United States v., 986 F.2d 31 (2d Cir. 1993)      18

Shaheen, Clarkson Co. v., 544 F.2d 624 (2d Cir. 1976)      40

Shrader v. CSX Transp., Inc., 70 F.3d 255 (2d Cir. 1995)      43

Shank v. Naes, 773 F.2d 1121 (2d Cir. 1985)      40

Sung Cho v. City of New York, 910 F.3d 639 (2d Cir. 2018)      31

Tucker v. Outwater, 118 F.3d 930 (2d Cir. 1997)      34

Vossbrinck v. Accredited Home Lenders, Inc.,
773 F.3d 423 (2d Cir. 2014)      31

Weitzman v. Stein, 897 F.2d 653 (2d Cir. 1990)      40

**Other Federal and State Cases**      **Page**

Ceglia v. Zuckerberg, 772 F. Supp. 2d 453 (W.D.N.Y. 2011)      29

Great Western Mining & Mineral Co. v. Fox Rothschild LLP,
615 F.3d 159 (3d Cir. 2010)      31

Harris v. Harvey, 605 F.2d 330 (7th Cir. 1979)      34

Microsoft Corp., In re United States v.,
253 F.3d 34 (D.C. Cir. 2001)      44

| | |
|---|---|
| Matter of Smith v. Heggen NY slip Op 77220 (AD3 2023) | 22 |
| Matter of Smith v. Pelagalli 40 N.Y.3d 1060 (AD3 2023) | 22 |
| Matter of Smith v. Fisher cv-25-0188 | 23 |

**Federal Statutes**                                               **Page**

| | |
|---|---|
| 18 U.S.C. § 666 | 8, 18 |
| 18 U.S.C. § 1512 | 19 |
| 18 U.S.C. §§ 1961–1962 | 10, 19 |
| 28 U.S.C. §§ 144, 455 | 2, 12, 17, 43, 44, 48 |
| 28 U.S.C. § 636 | 15 |
| 28 U.S.C. § 1257 | 30 |
| 28 U.S.C. § 1291 | 1 |
| 28 U.S.C. § 1331 | 30 |
| 31 U.S.C. §§ 3729–3733 (False Claims Act) | 8 |
| 42 U.S.C. § 1983 | 3, 10, 21, 33 |
| 42 U.S.C. §§ 654, 666, 677 | 5, 8, 18 |
| ADA (42 U.S.C. § 12101 et seq.) | 10 |
| Federal Rules of Appellate Procedure | 1 |
| Federal Rules of Civil Procedure 6, | 2, 42 |
| Federal Rules of Civil Procedure 7(b)(1), | 2, 12, 42 |
| Federal Rules of Civil Procedure 12(b) | 14, 15 |
| Federal Rules of Civil Procedure 26(c), | 12, 45 |

**Federal Statutes**                                         **Page**

Federal Rules of Civil Procedure 26(f),                      11, 12, 45

Federal Rules of Civil Procedure 52(a),                      40

Federal Rules of Civil Procedure 60(b),                      1, 2, 12, 16, 42, 47, 48

Federal Rules of Civil Procedure 65 –                        11, 14, 40

Federal Rules of Civil Procedure 65(d)                       39

Federal Rules of Civil Procedure 72(a)                       15

Federal Rules of Evidence                                    20

Local Rule 7.1                                               2, 11, 12, 15, 42

Local Rule 72,1(b)                                           15

RICO (18 U.S.C. §§ 1961–1968)                                10, 19

U.S. Code of Conduct Canon 2                                 17

**New York Statutes**

County Law Article 18-B                                      3

Judiciary Law § 35(7),                                       3

Judiciary Law § 35(8)                                        3

COMES NOW Appellants Ethan D. Smith, pro se, and Jennifer L. Dees, sui juris, who respectfully submit this appellate brief pursuant to the Federal Rules of Appellate Procedure "FRAP". This appeal challenges the U.S. District Court for the Northern District of New York's "NDNY" Summary Order dated March 24, 2025 **[ECF 31]**.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1291, as Appellants seek review of a final decision entered on March 24, 2025, by (Hon. Judge D'Agostino) denying Appellants' Motion for Reconsideration and Vacatur under Rule 60(b), Request for Expedited Adjudication of the Preliminary Injunction **[ECF 29]**, and Motion for Recusal **[ECF 30]**.

These orders are immediately appealable under the collateral order doctrine, as they deny critical injunctive relief and raise issues of judicial impartiality and ongoing constitutional violations. Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949); Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 882 (2009). The preliminary injunction within **[ECF 1]** was never adjudicated, constituting a constructive denial. Carson v. American Brands, Inc., 450 U.S. 79, 84 (1981).

This appeal is timely under FRAP 4(a)(1)(A). The Summary Order was entered March 24, and the Notice of Appeal was filed the same day **[ECF 32]**.

1

## STATEMENT OF THE ISSUES

1. Whether the District Court's reliance on Judge D'Agostino's dismissal of Dees v. Zurlo as a basis for denying claims for injunctive relief is legally erroneous, given that Dees v. Zurlo was tainted by obstruction of justice perpetrated by many of the same Defendants and the District Court itself; and further, whether the court's invocation of the domestic relations exception, Younger abstention, and Rooker-Feldman doctrine to dismiss the claims was improper.

2. Whether the District Court's refusal to disclose or address disqualifying personal, political, and professional affiliations with named Defendants— constitutes obstruction of justice and an institutional effort to conceal ongoing fraud involving Title IV-D/IV-E funds, falsified tax records, and jurisdictionally void state proceedings, thereby irreparably compromising the integrity of the judicial process.

3. Whether the District Court committed reversible error by denying Appellants' motion for recusal pursuant to 28 U.S.C. §§ 144 and 455, where the record demonstrated substantial and uncontroverted evidence of undisclosed personal, political, and professional affiliations between Judge D'Agostino and named Defendants, necessitating disqualification to safeguard the appearance of judicial impartiality as mandated by Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009), and Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847 (1988).

4. Whether the District Court violated the Due Process Clause of the Fifth Amendment by summarily denying Appellants' Rule 60(b) for reconsideration and vacatur and recusal motions without permitting adversarial briefing or evidentiary development, in contravention of FRCP 60, 6, 7, and Local Rule 7.1, thereby depriving Appellants of a meaningful opportunity to be heard on allegations of fraud, mistake, and manifest injustice.

5. Whether the District Court's failure to adjudicate Appellants' motion for a preliminary injunction, pending since February 11, 2025, despite ongoing irreparable harm from void state court proceedings, constituted a structural due process violation warranting appellate intervention under the collateral order doctrine.

6. Whether the District Court's application of judicial and quasi-judicial immunity was erroneous, as immunity does not shield actions taken in the clear absence of jurisdiction, nonjudicial acts such as fraud and retaliation, or ongoing

constitutional violations, particularly when Appellants seek equitable relief under
Ex parte Young, 209 U.S. 123 (1908).

7. Whether the District Court's cumulative procedural irregularities—including the
text-only TRO denial on February 19, sua sponte dismissals without briefing,
failure to enforce Rule 26(f) discovery obligations, and ex parte grants of relief
to Defendants—constitute a systemic denial of due process, necessitating vacatur
of the March 24, Summary Order and remand to an impartial judge to restore
fairness and judicial integrity.

## STATEMENT OF THE CASE

This appeal arises from a civil rights action under 42 U.S.C. § 1983 seeking

injunctive and declaratory relief for ongoing constitutional violations committed

under color of state law by New York State judges, judicial administrators, and

unlawfully appointed counsel. The underlying dispute originates from *Smith v.
Smith* (Index No. 2020-1227), a Supreme Court *private* matrimonial proceeding

commenced on June 10, 2020, in Saratoga County and conducted *ultra vires* from

its inception due to the unauthorized appointment of publicly funded counsel

without statutory authority or findings of indigency, in violation of Judiciary Law

§§ 35(7), 35(8), and County Law Article 18-B.

Smith v. Smith is a private civil matrimonial action governed by the

Domestic Relations Law ("DRL"), not a proceeding within the exclusive

jurisdiction of the Family Court. As such, public funding for assigned counsel or

Attorneys for the Child ("AFCs") is expressly prohibited absent a judicial finding

of indigency in proceedings specifically authorized under the Family Court Act. In

3

Supreme Court divorce actions, the appointment of AFCs is permissible only on a private-retainer basis, and only with the mutual consent of both parties. No such consent was given in this case.

Plaintiff Smith was denied indigent status on four separate occasions, including by Judge Versaci himself, who found that Plaintiff owned two residential properties—thereby disqualifying him—Ms. Smith holds an identical ownership interest in the same properties and, by the same standard, is likewise ineligible for public assignment of counsel. Even if Ms. Smith had qualified for assistance, the law mandates that, in matrimonial actions, an indigent party may only be represented by a pro bono attorney who executes a retainer agreement entitling them to compensation from any assets awarded at the conclusion of the case.

Despite this, former Judge Pelagalli sua sponte appointed three publicly funded attorneys without hearings or indigent orders: Defendant AFC Mongue (August 2020), Defendant AFC Vinson (February 2022), and Defendant Tobin— 18-B counsel, (August 2022).

Judge Versaci, assigned in January 2024, had a duty to correct these jurisdictional defects but instead perpetuated and covered up the fraud. He refused to adjudicate Plaintiff's objections, barred all motion practice, denied subpoenas for critical financial and tax records, and blocked efforts to call witnesses or compel discovery—even after Ms. Smith submitted unsigned, redacted tax returns

after resting her case-in-chief. While Ms. Smith was allowed to call three

witnesses, including a non-subpoenaed co-Plaintiff Dees, Plaintiff was denied the

right to call any witnesses. Trial transcripts from March 6 to April 2, 2025, reflect

judicial coaching, selective questioning, manipulation of the record, and aiding and

abetting tax fraud. **[Second Cir. 25-692, ECF 52]**

These appointments not only lacked any legal foundation under New York

law but also contravened the clear legislative intent of these statutes, which strictly

limit public funding for counsel to specific proceedings and require documented

indigency findings to safeguard public resources and ensure judicial accountability.

Furthermore, the unauthorized appointments and subsequent misappropriation of

federal funds under Title IV-D and IV-E of the Social Security Act violated

Congress's intent, as expressed in 42 U.S.C. §§ 654, 666, and 677, which condition

federal reimbursements on strict compliance with eligibility criteria and procedural

safeguards. Congress intended these programs to support legitimate child support

enforcement and foster care services, not to enable fraudulent or jurisdictionally

void state court proceedings.

Additionally, the *ultra vires* appointments and the state court's persistence in

exercising jurisdiction without statutory or constitutional authority violated the

separation of powers doctrine. By appointing publicly funded counsel without

legislative authorization or indigency findings, the judiciary usurped the New York

Legislature's exclusive authority to define the scope of public funding for legal representation. This judicial overreach also disregarded Congress's legislative prerogative to regulate federal funding under Title IV-D and IV-E, encroaching on the federal legislative domain. Such actions disrupt the constitutional balance between the branches of government, undermining the rule of law and the structural protections enshrined in both the U.S. and New York Constitutions. These violations, perpetuated under color of state law, form the basis of appellants' claims for equitable relief to halt the ongoing constitutional harms inflicted by the void state proceedings.

No financial hearing has ever been conducted in this case. Instead, the court has unlawfully enforced a fraudulent pendente lite support order for more than five years, based solely on Ms. Smith's knowingly false claims of indigency—claims made while she concealed substantial income and assets from the court. Despite Plaintiff's repeated efforts to challenge the order, the court summarily denied every motion he filed, even in instances where Ms. Smith and her attorneys failed to respond or submit any opposition—enabling Ms. Smith to evade all disclosure obligations and withhold financial records for over five years.

As a direct result of this scheme, Plaintiff's driver's license was suspended, and a warrant was issued against him even after filing evidence of fraud into the record—punitive measures rooted in false pretenses and executed through a

6

corrupted abuse of the Title IV-D child support enforcement framework. These actions constitute state-facilitated extortion and egregious abuse of process. **[ECF 1 ¶ 6; Ex. 10; ECF 29 at 8].**

*The Illegal* court appointed counsel further failed to act in the children's best interests. Ms. Smith violated court-ordered parenting time since 2020 and ignored reunification therapy mandates since 2022. Despite documented mental health concerns, educational neglect, and a founded CPS report for child endangerment against Ms. Smith in 2023, none of the attorneys took enforcement action. Instead, they sought dismissal of Plaintiff's contempt motions—prioritizing concealment of their unlawful appointments and related funding over the welfare of the children. In addition, these attorneys unlawfully tried to manipulate the lawful release of HIPAA- and FERPA-protected medical and educational records from plaintiff without a court order.

The state record confirms that Ms. Smith engaged in systematic fraud, including submission of fraudulent tax returns from 2020 through 2024 claiming head-of-household status and all three children as dependents, despite evidence of cohabitation with Plaintiff and plaintiff covering all marital bills. She filed false net worth statements, concealed income, embezzled $60,000 in her cousins trust funds, then made false criminal accusations against Plaintiff for it. No evidentiary hearings were ever held. All financial and procedural challenges were suppressed

by defendants **[ECF 29 at 12–13]** resulting in unlawful Title IV-D and IV-E reimbursements that violated 18 U.S.C. § 666; 42 U.S.C. §§ 654, 666, 677; and 31 U.S.C. §§ 3729–3733 (False Claims Act).

The Appellate Division, Third Department "AD3"—along with Defendants Mayberger and multiple Justices named in Dees v. Zurlo—were notified of these unlawful appointments as early as 2022 yet took no remedial action. Instead, they authorized continued payments, obstructed NYSCEF filings, and enabled Saratoga Supreme Court to proceed without any lawful jurisdiction. This sustained misconduct violated Appellants' Fourteenth Amendment rights, irreparably damaged Smith's parent-child relationship, and inflicted lasting emotional and physical harm on both Appellants. **[ECF 1 ¶¶ 4, 30–31; ECF 29 at 14–15]**.

When Plaintiffs turned to the federal court for relief this second time, it was with the good-faith belief that the judiciary would fulfill its constitutional duty to safeguard individual rights and intervene where state actors had acted without jurisdiction and in flagrant violation of due process. Instead, what followed was a coordinated failure of the federal system itself.

On the same day the Second Circuit dismissed the appeal in Dees v. Zurlo (2nd Cir. Dees v. Knox 24-1574) and muted a pending motion to disqualify Judge D'Agostino for obstruction of justice, Judge D'Agostino was inexplicably permitted to assume jurisdiction over this new federal case—despite her

established and undeniable involvement in the earlier misconduct and extensive documentation of her personal, public, and institutional conflicts.

There was no legitimate basis for assigning this matter to Judge D'Agostino. Given the unresolved appellate issues, her prior adverse rulings, and her well-documented connections to the parties and institutions implicated in the misconduct, her continued involvement violates every principle of judicial impartiality and undermines the integrity of these proceedings. Rather than serving as a neutral arbiter, she has used her position to obstruct the very litigation intended to expose state and federal constitutional violations.

The record before the court demonstrated overwhelming and unrebutted evidence of jurisdictional voidness, structural due process violations, and retaliatory abuse by state officials operating under color of law. Yet, the Federal District court Judge took no corrective action. She permitted the unconstitutional proceedings in the state court to continue unabated in March-April despite being fully informed of the gravity and immediacy of the constitutional injuries at issue.

This failure was not merely procedural—it was a deliberate abdication of judicial duty and ethical violation. The refusal to adjudicate meritorious claims and the continued concealment of conflicts of interest appear designed to insulate institutional actors from liability. Among the most egregious conflicts was that of Judge Versaci, the presiding judge in the state court, whose wife serves as

Executive Director of the NDNY Bar Association. This undisclosed relationship raises serious questions about the impartiality of the federal bench and whether the court deliberately acted to protect its own institutional allies.

The appearance of coordinated obstruction between state and federal courts undermines the very foundation of 42 U.S.C. § 1983 and signals to the Plaintiff, the public, the Department of Justice, and the FBI that the federal judiciary, like its state counterpart, has been compromised. If left unaddressed, the district court's conduct will establish a chilling precedent, transforming courts of law into instruments of institutional protectionism that shield state actors from accountability, rather than serving as impartial forums for constitutional redress.

## A. Procedural History and District Court Rulings

On February 11, 2025, Appellants filed their complaint and moved for an ex parte TRO and preliminary injunction to enjoin the void state court proceedings scheduled to resume on March 6-12. **[ECF 1]**. The complaint alleges violations of the First, Fifth, and Fourteenth Amendments, 42 U.S.C. § 1983, the ADA, and RICO (18 U.S.C. §§ 1961-1968), asserting that Defendants' actions constitute a coordinated scheme of judicial retaliation, obstruction of justice, and fraud under color of state law. **[id ¶¶ 3-8, 15-16, 36]**. The TRO motion sought to prevent imminent harm from the scheduled trial, and the preliminary injunction motion

10

requested a stay of state proceedings due to their jurisdictional voidness and ongoing constitutional violations. **[id at 4; ECF 29 at 23].**

On February 19, the District Court denied the TRO via a text-only order **[ECF 12]**, without issuing findings of fact or conclusions of law as required by FRCP 65(d)(1). The order failed to address the preliminary injunction, which remained pending. **[ECF 29 at 16-17].**

On March 2, Appellants attempted to initiate a Rule 26(f) discovery conference with all Defendants, including AAG Corcoran, who represents Defendants Fisher, Versaci, and Mayberger and maintains close relationships with them. No response was received, despite good-faith effort. **[ECF 29 at 8, Ex. 1].**

Instead, March 6, at 2:38 p.m., the same day the state trial resumed before Defendant Versaci, Corcoran filed a pre-motion letter requesting leave to file a motion to dismiss citing judicial and government attorney immunity **[ECF 20]**— strategically timed to exploit Appellants' engagement in all-day state court proceedings with defendants, depriving them the ability to respond. The District Court granted the request sua sponte on March 7, at 11:34 a.m. **[ECF 21]**, without enforcing the mandatory Rule 7.1(a)(2) conference or allowing Appellants to object, further violating due process. **[ECF 29 at 9]**

On March 17, at 3:13 p.m., the judicial Defendants filed an informal letter requesting a stay of discovery and pleading obligations, falsely asserting an

11

automatic stay based on their unfiled motion to dismiss **[ECF 27]**. The Court

granted this request sua sponte on March 18, at 10:39 p.m. **[ECF 28],** without a

formal motion, briefing, or notice to Appellants, contravening FRCP 7(b)(1), Local

Rule 7.1(a)(1), and Rule 26(c), which require a noticed motion, supporting

memorandum, affidavit, proof of service, and a showing of good cause. Local Rule

7.1(b)(1) mandates a 14-day response period, which was ignored. This ex parte

stay insulated Defendants from disclosure obligations, obstructing the development

of the evidentiary record in a civil rights case alleging ongoing constitutional harm.

**[ECF 29 at 22].**

On March 21, 2025, Appellants filed two emergency motions: The first

Motion **[ECF 29]** sought vacatur of the February 19, **[ECF 12]**, March 7, **[ECF

21]**, and March 18, **[ECF 28]** orders under Rule 60(b)(1), 60(b)(3), and 60(b)(6). It

also requested expedited adjudication of the preliminary injunction motion pending

since February 11, 2025, a stay of state court proceedings scheduled for April 1-2,

sanctions against the N.Y. AG's Office for willful obstruction and failure to confer

under Local Rule 7.1(b)(2), and leave to amend the complaint to include March 6-

11, trial transcripts and additional defendants. **[ECF 29 at 23].** The motion detailed

ongoing tax fraud, and retaliatory harm, supported by transcripts and exhibits.

The Second Motion **[ECF 30]** moved for the disqualification of Judge

D'Agostino pursuant to 28 U.S.C. §§ 144 and 455, citing multiple grounds

12

establishing both actual and apparent conflicts of interest that would lead a

reasonable observer to question her impartiality which includes:

- A longstanding public mentorship relationship with Defendant Clark, a party named in Dees v. Zurlo, **[id at 13–14]** The Court exercises jurisdiction over the present case involving Defendant Mayberger—Clark's husband **[id at 15]**.

- On April 10, 2025, during this litigation—Judge D'Agostino appeared in an honorary capacity at a legal gala alongside named Defendants and Defendant law firms who sponsored the gala, **[id at 15–20]**.

- Judge D'Agostino maintains close familial ties—including her sister, brother, niece, and son—with Francine Vero, the sitting President of the Saratoga Bar Judge Vero shares chambers with Judge Jeffrey Wait a named defendant in Dees v. Zurlo **[id at 15–20]**

- Photographic and testimonial evidence shows Judge D'Agostino socializing with Defendants Garry, Clark, Fisher, and Mayberger during the pendency of both instant actions. **[id at 20–22.]**

- A former law clerk of Judge D'Agostino is employed by defendant Saratoga County District Attorney Office, parties in Dees v. Zurlo **[id at 20–22.]**

- Defendant Versaci's spouse, Tina Versaci, serves as the Executive Director of the NDNY Federal Bar Association, an organization that maintains direct and ongoing institutional ties to the Court and its judges. **[id at 20–22; see also ECF 29 at 17]**.

Despite court rules setting response deadlines for April 11, and reply

deadlines for April 18, the Court summarily denied both motions on March 24,

three (3) days after being filed **[ECF 31]**, without permitting opposition briefing or

evidentiary development. The Order incorrectly stated that the preliminary

injunction motion was not pending, despite no prior adjudication or findings under

13

Rule 65(a) and (d), and failed to apply the recusal standard under Liljeberg, 486

U.S. 847 (1988). **[id at 2-3]**.

It relied heavily on Dees v. Zurlo, dismissed sua sponte without service,

appearance, or briefing, where Judge D'Agostino preemptively adopted unraised

defenses, acting as an advocate for unserved defendants. **[id at 2; ECF 29 at 15-**

**16]**. It reiterated Dees v. Zurlo's flawed application of Rooker-Feldman, Younger

abstention, judicial immunity, and government attorney immunity, ignoring new

claims, new defendants, and ongoing violations. **[id at 2-3]**.

## B. Post-Appeal Procedural Irregularities and Structural Conflicts

Following the filing of Appellants' Notice of Appeal on March 24, **[ECF**

**32]**, a cascade of procedural irregularities and ethically concerning developments

further compounded the prejudice already inflicted below. March 31, Defendant

Vinson submitted an Answer to this lawsuit **[ECF 38]**, followed by Defendants

Tobin and Mongue on April 3 **[ECF 39–40]**. Despite these responsive pleadings,

Appellants were forced to file a motion to compel mandatory Rule 26(f) discovery

obligations on April 4, 2025 **[ECF 41]**.

On April 7, 2025, Defendants Vinson, Tobin, and Mongue collectively filed

a procedurally defective Rule 12(b) motion to dismiss **[ECF 46]**, notwithstanding

their responsive pleadings filed the week earlier. On the same day, the Judicial

Defendants separately filed a Rule 12(b) motion of their own **[ECF 47]**.

In response, Appellants promptly moved to strike the Defendant Attorney's improper filing pursuant to the FRCP and Local Rule 7.1 **[ECF 48]**. Nevertheless, the following day—without affording Appellants the benefit of briefing, oral argument, or opposition filings from Defendants—Magistrate Judge Stewart summarily denied the motion to compel discovery **[ECF 49]**, citing the pendency of Rule 12(b) motions as justification, despite their procedural invalidity and the absence of any motion for stay or responsive legal opposition. **[ECF 29 at 22–23]**.

On April 8, 2025, Appellants timely filed an objection to the Magistrate Judge's sua sponte denial of discovery pursuant to FRCP 72(a) and 28 U.S.C. § 636(b)(1)(A). **[ECF 50]**. None of the Defendants submitted any opposition to either the motion to strike or the Rule 72(a) appeal, and all applicable response deadlines have lapsed under Local Rule 72.1(b). This failure to respond—not only waives opposition but underscores Defendants' apparent confidence that the District Court will continue to shield them from scrutiny.

None of the Defendants—judicial or attorney—have made any attempt in their motions to dismiss **[ECF 46-47]** to demonstrate that the underlying state court proceedings were conducted with lawful jurisdiction. Not a single Defendant cited a statute, case, or constitutional provision establishing that indigency findings were made or that the appointment of publicly funded attorneys was lawful. They have not addressed—let alone justified—the absence of any financial disclosures

15

or court orders authorizing assigned counsel. Instead, their motions to dismiss are wholly reliant on the presumption that the District Court will protect them from accountability, regardless of the law. These motions are legally deficient and procedurally egregious, and Defendants have now abandoned all arguments by failing to defend them when challenged.

These events parallel the serious procedural misconduct documented in Dees v. Zurlo, where Judge D'Agostino previously dismissed constitutional claims sua sponte without service of process, invoking the Rooker-Feldman and Younger abstention doctrines as blanket shields for unserved defendants. In doing so, she disregarded well-established exceptions for claims premised on fraud, void judgments, and ongoing constitutional injury. **[ECF 29 at 15–16]**. Appellants are preparing both a Rule 60(b) motion in the district court and a petition for writ of certiorari to the U.S. Supreme Court in Dees v. Zurlo, as the legal questions presented implicate structural due process violations, jurisdictional misconduct, criminal obstruction by state and Federal actors, and judicial disqualification.

The appearance of impropriety was further exacerbated on April 10, 2025, when Defendant Vinson and Judge D'Agostino were both honored guests at a judicial appeals court dinner hosted by the NY State Bar. The event was sponsored in part by Vella-Carbone & Vinson—Vinson's own law firm—and attended by numerous state officials currently named in related federal proceedings, including

the Chief Justice of the NY Court of Appeals. There is no legitimate reason and is entirely inappropriate for a sitting federal judge to be socializing with state court judges and parties to pending litigation—especially at events sponsored by a defendant's law firm—when she is actively presiding over multiple lawsuits either brought by or against them.

None of these connections were disclosed by the District Court or by any party. Plaintiffs were forced to uncover them independently, further compounding the appearance of judicial bias and impropriety. The timing, sponsorship, and guest list of this gathering—occurring mere days after contested motions were filed and critical rulings issued—raise grave concerns about impartiality, undisclosed conflicts of interest, and extrajudicial coordination that severely undermine public confidence in the integrity of past and present proceedings.

Given the procedural misconduct, the disregard for adversarial process, and the external associations between sitting federal judges and parties to this litigation, the case has now entered a zone of intolerable constitutional risk. The disqualification of the judicial officers involved is not merely advisable—it is mandated by principles of structural due process and judicial ethics, including Canon 2 of the Code of Conduct for United States Judges and the disqualification standards under 28 U.S.C. §§ 144 and 455. Continued adjudication by conflicted

judicial officers would irreparably compromise both the integrity of these proceedings and public confidence in the federal judiciary.

The egregious misconduct alleged in this case—perpetrated by New York State judges, judicial administrators, court-appointed counsel, and facilitated by the federal district court's obstruction—warrants immediate intervention by the U.S. Department of Justice to investigate federal criminal violations. The record demonstrates a coordinated scheme of fraud, obstruction of justice, and abuse of federal funds under Title IV-D and IV-E of the Social Security Act, implicating serious crimes that undermine the integrity of the judicial system and public trust. DOJ investigation is essential to hold state and federal actors accountable and prevent further constitutional harm.

First, the unauthorized appointment of publicly funded counsel in Smith v. Smith, without statutory authority or indigency findings, facilitated fraudulent reimbursements under 42 U.S.C. §§ 654, 666, and 677, violating 18 U.S.C. § 666. Defendants knowingly misappropriated federal resources by sustaining void proceedings, concealing Ms. Smith's false indigency claims, and obstructing discovery of financial records. These actions directly contravene Congress's intent warranting DOJ scrutiny for criminal fraud. United States v. Rooney, 986 F.2d 31, 33–34 (2d Cir. 1993).

Second, the state and federal courts' actions—expunging NYSCEF filings, suppressing evidence of tax fraud, and retaliating against appellants for exercising First Amendment rights—implicate 18 U.S.C. § 1512. Judge Versaci's manipulation of trial proceedings, including barring subpoenas and witnesses, and Judge D'Agostino's sua sponte dismissals without briefing or discovery, suggest a concerted effort to conceal misconduct and shield defendants from accountability. Such conduct meets the threshold for obstruction, as it was intended to impede federal civil rights litigation under § 1983. See United States v. Reich, 479 F.3d 179, 185–86 (2d Cir. 2007).

Third, the systemic nature of the misconduct, involving multiple state actors and federal judicial acquiescence, raises the specter of a racketeering enterprise under 18 U.S.C. §§ 1961–1962. The defendants' pattern of fraud, retaliation, and misuse of public funds, sustained over years and across state and federal forums, constitutes a continuing criminal enterprise designed to perpetuate unlawful proceedings and evade scrutiny. The DOJ's expertise in investigating RICO violations is critical to uncovering the full scope of this scheme.

Appellants respectfully urge this Court to recommend DOJ investigation into these criminal violations, alongside granting the requested equitable relief, to restore justice and deter future abuses. See Blessing v. Freestone, 520 U.S. 329, 340–41 (1997) (federal enforcement of Title IV-D rights under § 1983).

## ARGUMENTS

The District Court's March 24, 2025, Summary Order **[ECF 31]** constitutes reversible error and a systemic denial of due process and equal protection under the Fifth and Fourteenth Amendments. The Order perpetuates a jurisdictional travesty by sustaining void state court proceedings in Smith v. Smith, tainted by unauthorized attorney appointments, fraudulent financial disclosures, and retaliatory misconduct, which Appellants sought to enjoin.

## I. THE DISTRICT COURTS RELIANCE ON ABSTENTION DOCTRINES TO DENY RELIEF WAS LEGALLY ERRONEOUS

### A. The Domestic Relations Exception Does Not Apply to Claims Arising Under Federal Question Jurisdiction

In Dees, the court dismissed claims under the domestic relations exception despite the fact that Plaintiff Dees was not a party to any state matrimonial action. This alone rendered the doctrine inapplicable. Nevertheless, the Second Circuit's implicit endorsement of this ruling improperly expands a narrow exception beyond its constitutional limits. See 2nd Cir Case Dees v. Knox, No. 24-1574.[1]

---

[1] Plaintiffs respectfully request that the Court take judicial notice of the official records and adjudicative facts referenced herein, which are not subject to reasonable dispute and are either (1) generally known within the territorial jurisdiction of this Court or (2) capable of accurate and ready determination by sources whose accuracy cannot reasonably be questioned. See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 568 n.13 (2007), Fed. R. Evid. 201.

As established by the Supreme Court and Second Circuit, the domestic relations exception applies only to diversity jurisdiction cases seeking decrees of divorce, alimony, or child custody modification—not to federal question jurisdiction or civil rights claims against state actors. See Ankenbrandt v. Richards, 504 U.S. 689, 701–04 (1992); Marshall v. Marshall, 547 U.S. 293, 308–09 (2006)

Dees' claims—which include due process violations, retaliation for ADA advocacy, physical assaults, and suppression of court filings—arise under federal statutes such as 42 U.S.C. § 1983, the ADA, and RICO, and do not implicate the core concerns of the domestic relations exception. **[ECF No. 1, ¶¶ 4, 30–31; ECF No. 29 at 14–19].**

Similarly, Plaintiff Smith's claims challenge the jurisdictional voidness of the Smith v. Smith state proceedings, which have remained pending for over five years without the entry of a final order. These claims do not seek federal adjudication of custody or support determinations but rather redress for pervasive structural constitutional violations—including judicial bias, fraud upon the court, extortion, obstruction of justice, and repeated refusals by disqualified judges to recuse. Following the initiation of this federal action, state court actors—including Defendant Versaci—accelerated efforts to rush the underlying proceedings to conclusion, without addressing threshold jurisdictional defects or affording Plaintiff any semblance of due process.

21

Versaci systematically foreclosed all avenues of procedural due process in the underlying state proceedings. He barred Plaintiff from calling witnesses or issuing subpoenas, refused to adjudicate multiple long-pending emergency motions concerning custody and contempt—some outstanding for more than 18 months— and unilaterally prohibited the filing of any further motions by Plaintiff. These actions were taken in direct retaliation for Plaintiff's assertion of federally protected rights and with demonstrable animus, designed to suppress the instant federal litigation and insulate the state judiciary from accountability.

The consequence has been a wholesale deprivation of access to a fair and impartial forum, in clear violation of the Fourteenth Amendment. Moreover, these actions have left minor children in ongoing danger by intentionally obstructing judicial review of critical emergency issues. This pattern of bad faith and obstruction is not speculative; it is substantiated by the publicly available state court docket and underlying record. Plaintiffs respectfully request that this Court take judicial notice of the NYSCEF docket in Smith v. Smith, Index No. 2020-1227, which reflects the procedural history, omissions, and delays cited herein.

Further evidence of systemic bias and bad faith includes: (1) the Appellate Division's summary denials of multiple Article 78 petitions without explanation (Matter of Smith v. Pelagalli, 40 N.Y.3d 1060 (2023); Matter of Smith v. Heggen, 2023 NY Slip Op 77220 [3d Dept. 2023]); (2) the expungement or disappearance

22

of critical filings from the NYSCEF docket, prior to the filing of the active Article 78 (cv-25-0188); and (3) Versaci continued presiding over the matter despite multiple, well-documented disqualifying conflicts of interest. **[ECF 1, ¶¶ 2, 7–8; ECF 29 at 8, 13–14]**. These facts collectively confirm that Plaintiff Smith's claims arise from independent constitutional violations, not domestic relations adjudication, and that federal jurisdiction is both appropriate and necessary.

Federal courts have a "paramount" duty to hear federal question cases, particularly civil rights claims against state actors. England v. Louisiana State Bd. of Med. Exam'rs, 375 U.S. 411, 415 (1964). The District Court's reliance on the domestic relations exception to decline jurisdiction over claims that lie at the heart of federal civil rights enforcement was a structural error and must be reversed.

## B. Younger Abstention Is Inapplicable Where State Proceedings Are Void, Retaliatory, and Conducted in Bad Faith

The District Court's invocation of Younger v. Harris, 401 U.S. 37 (1971), to abstain from adjudicating claims was equally misplaced. As clarified in Sprint Communications, Inc. v. Jacobs, 571 U.S. 69, 78–80 (2013), Younger abstention applies only in limited categories of state proceedings: (1) ongoing criminal prosecutions, (2) certain quasi-criminal civil enforcement actions, and (3) proceedings implicating a state's interest in enforcing the orders and judgments of its courts. Smith v. Smith, a private matrimonial action between private parties, does not fall into any of these categories.

Younger abstention does not apply to the underlying matrimonial action because it fails the controlling three-part test set forth in Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982): (1) there is no ongoing state proceeding that is judicial in nature and entitled to deference, as the matrimonial action is jurisdictionally void; (2) the proceedings do not implicate an important state interest, but rather involve fraud, retaliatory conduct, obstruction, and financial misappropriation; and (3) the state forum has proven wholly inadequate to resolve federal constitutional claims, having systematically denied Appellants access to a fair process.

The Supreme Court emphasized in New Orleans Pub. Serv., Inc. v. Council of City of New Orleans (NOPSI), 491 U.S. 350, 368 (1989), Younger is an "extraordinary and narrow exception" to the federal courts' "virtually unflagging obligation" to exercise jurisdiction over § 1983 claims. In re Aguinda, 241 F.3d 194, 202 (2d Cir. 2001), the Second Circuit affirmed that federal courts have a "virtually unflagging obligation" to exercise jurisdiction conferred upon them and must not abdicate that responsibility except in the most extraordinary circumstances. Here, state proceedings are void ab initio, retaliatory, and incapable of redressing ongoing constitutional injuries, abstention is not only inappropriate— it would constitute abdication of the federal judiciary's duty under Article III.

24

The Second Circuit has explicitly rejected the application of Younger to private divorce or custody actions, recognizing that such matters do not implicate the requisite "important state interests." See Falco v. Justices of the Matrimonial Parts of Sup. Ct., 805 F.3d 425, 427–28 (2d Cir. 2015). Younger abstention is categorically barred where the state proceedings are (1) void ab initio, (2) conducted in bad faith, or (3) incapable of providing an adequate forum for federal claims. See Gibson v. Berryhill, 411 U.S. 564, 577 (1973); Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198–99 (2d Cir. 2002); Kirschner v. Klemons, 225 F.3d 227, 236–38 (2d Cir. 2000).

The Smith proceedings are jurisdictionally void, tainted by the unlawful appointment of publicly funded counsel without any statutory basis or indigency determination. No statute, rule, or controlling case law has been cited—either in the state court record or by Defendants in their motions to dismiss this federal action **[ECF 46 & 47]**—that authorizes such assignments in a matrimonial proceeding. Despite repeated jurisdictional objections, neither the state court nor the District Court has been presented with any lawful justification or jurisdictional findings to sustain the appointments. Instead, Defendants have engaged in coordinated efforts to manipulate the state, appellate and federal record, obstruct justice, and conceal the lack of jurisdiction—actions compounded by their connections to Judge D'Agostino.

25

These procedural and jurisdictional defects are further compounded by egregious financial misconduct that Judge Versaci actively facilitated after the filing of this federal action. Ms. Smith has repeatedly engaged in fraudulent concealment of income and assets, refusing to produce any verifiable financial documentation or submit to mandatory evidentiary hearings—despite long-pending emergency motions concerning support, and contempt. Throughout her case-in-chief, she failed to introduce a single admissible piece of financial evidence.

When Plaintiff attempted to conduct cross-examination regarding Ms. Smith's employment, income, and tax filings, Versaci improperly curtailed the inquiry, thereby obstructing the development of a factual record essential to the resolution of the financial issues before the court. Subsequently, and only after resting her case, Ms. Smith attempted to retroactively fill the evidentiary gap by submitting unsigned, heavily redacted, and facially fraudulent tax returns on April 2, 2025—documents which had not been authenticated, disclosed during discovery, or introduced during trial.

Rather than strike these inadmissible materials or impose sanctions for this blatant procedural violation, Versaci tacitly accepted the submission and permitted the fraud to stand unchallenged. The record further reflects Versaci affirmatively instructed Ms. Smith to continue filing her tax returns under "Head of Household" status while falsely claiming all three minor children, despite the absence of any

lawful order granting her that status—issued with full knowledge that Plaintiff had formally challenged the accuracy and legality of Ms. Smith's tax filings and sworn financial disclosures.

Despite Plaintiff's consistent and substantiated allegations that Ms. Smith's financial filings were fraudulent, Versaci repeatedly declared on the record—without permitting evidentiary hearings, cross-examination, or discovery—that "there is no fraud" and "no fraud has been proven." These statements, made in the absence of any factual inquiry, reflect a deliberate and systemic effort to suppress critical evidence, shield Ms. Smith's perjury, and insulate both Versaci and other state actors from exposure for their complicity in jurisdictionally void proceedings.

The trial transcripts from Smith v. Smith unequivocally demonstrate that Versaci's assertions were untruthful and part of a calculated pattern of misconduct, consistent with orchestrating a predetermined outcome to protect institutional interests—**[2nd Cir. 25-692, ECF 52]**—tantamount to judicial manipulation of the record, a grave abuse of authority and a direct violation of due process.

Sworn testimony had already established that Plaintiff paid the entirety of the marital expenses—including mortgage, utilities, car payments, property taxes, vehicle registration, and auto insurance for both residences—through August 2021. Even after ceasing some payments, including those related to Ms. Smith's vehicle and insurance, in mid-2021, he continued to cover the majority of household costs

27

for both homes. These payments were made voluntarily, without any court order

compelling him to do so, in an effort to protect his financial interests and preserve

the marital assets during the pendency of the proceedings. Testimony and financial

records confirmed that in 2020, Ms. Smith did not qualify for "Head of

Household" status or the right to claim the children as dependents, as she remained

in the marital home until late August and contributed nothing financially.

Critically, testimony also confirmed that for the 2019 tax year, Ms. Smith

filed both a joint return with Plaintiff and a separate individual return falsely

claiming, "Head of Household" and all three children—an act of federal tax fraud

committed during the divorce proceedings. Despite this, Versaci instructed Ms.

Smith to continue filing under "HOH" status, even though no order granted her

such rights, in direct violation of federal law. Especially when Plaintiff paid over

$80,000 in spousal support and related expenses during the litigation, on to- of the

marital assets, none of which Ms. Smith reported on her tax returns as required

under New York law. She further misrepresented her marital status by claiming to

be "unmarried" on returns filed during years she remained legally married and

financially supported by Plaintiff.

This conduct amounts to judicially sanctioned tax fraud and underscores the

retaliatory, lawless nature of the state proceedings. Where a judge knowingly

facilitates perjury, financial fraud, and obstruction, the legitimacy of the tribunal

collapses. Such proceedings are void ab initio and conducted in bad faith, barring any application of abstention principles. See In re Gault, 387 U.S. 1, 41 (1967); Ceglia v. Zuckerberg, 772 F. Supp. 2d 453, 456 (W.D.N.Y. 2011). These circumstances demand federal adjudication of the constitutional violations at issue and preclude any deference to a forum so irreparably compromised.

Injunctive relief remains fully available against state officials where plaintiffs seek to halt ongoing constitutional violations, Hutto v. Finney, 437 U.S. 678, 690 (1978). There, the Supreme Court held that prospective equitable relief is not barred by sovereign immunity when it is necessary to remedy continuing harm caused by state actors acting under color of law. Further, Edelman v. Jordan, 415 U.S. 651, 664–65 (1974), clearly distinguishes between impermissible retrospective relief and constitutionally permitted prospective relief under Ex parte Young, 209 U.S. 123 (1908). The relief sought by Appellants is forward-looking: it seeks to stop unlawful state conduct that remains active and harmful, not to recover past damages. As such, it falls within the heartland of federal equitable jurisdiction and is not barred by sovereign immunity or abstention doctrines.

The District Court's invocation of the domestic relations exception and Younger abstention doctrine was not a mere misinterpretation of law—it was a calculated misuse of those doctrines to shield state actors and their close judicial and political allies from accountability. Rather than applying controlling precedent

29

in good faith, the court weaponized jurisdictional doctrines to obstruct federal review, suppress ongoing constitutional violations, and insulate a network of coordinated misconduct under the guise of judicial deference.

These doctrines cannot be used to shield ongoing constitutional violations, jurisdictional fraud, and retaliatory abuse of state judicial mechanisms. The orders below must be reversed to ensure Appellants' rights under the Constitution and federal law are fully and fairly adjudicated in a competent federal forum. See Pulliam v. Allen, 466 U.S. 522, 540 (1984); Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 721 (1996).

## C. The Rooker-Feldman Doctrine Is Inapplicable to Independent Claims Seeking Prospective Equitable Relief

The District Court's invocation of the Rooker-Feldman doctrine to preclude review is a flagrant abuse of discretion and a distortion of binding precedent. The doctrine, narrowly construed under 28 U.S.C. §§ 1257 and 1331, bars federal district courts only from exercising de facto appellate jurisdiction over final state court judgments rendered before the federal action commenced. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). No such final judgment exists in Smith v. Smith, which has remained unresolved for over five years, and Dees was never a party to the state proceedings. Appellants seek prospective equitable relief to enjoin ongoing constitutional violations, not review

30

of a state court order, placing their claims outside Rooker-Feldman's scope.
Skinner v. Switzer, 562 U.S. 521, 532 (2011).

As the Second Circuit clarified in Vossbrinck v. Accredited Home Lenders,
Inc., 773 F.3d 423, 426–27 (2d Cir. 2014), Rooker-Feldman does not bar federal
claims that allege fraud or constitutional violations independent of the state court
judgment. Appellants' claims arise from jurisdictional defects, fraud upon the
court, and systemic due process violations—not from dissatisfaction with a final
state decision. There is no judgment to review, and no appellate function is sought.

Moreover, under Great Western Mining & Mineral Co. v. Fox Rothschild
LLP, 615 F.3d 159, 166–67 (3d Cir. 2010), Rooker-Feldman applies only when a
federal court would be required to review and reject the legal conclusions of the
state court. Appellants claims do not require overturning any state court ruling—
they expose structural violations that remain unaddressed and unlawfully ongoing.

The Second Circuit's four-part test for Rooker-Feldman requires: (1) the
federal plaintiff lost in state court; (2) the injuries complained of were caused by
the state court judgment; (3) the plaintiff invites district court review of that
judgment; and (4) the state court judgment was final before the federal action.
Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005); Sung
Cho v. City of New York, 910 F.3d 639, 645 (2d Cir. 2018). None of these
elements are satisfied against either plaintiff.

31

Dees, as a non-party, cannot have "lost" in state court, and her injuries—

stem from Defendants' misconduct, not a state judgment. Smith's claims address

ongoing violations in an unresolved case, not a final judgment, and seek to enjoin

future harm, not reverse past rulings. The Supreme Court in Lance v. Dennis, 546

U.S. 459, 466 (2006), and Johnson v. De Grandy, 512 U.S. 997, 1006 (1994), held

that Rooker-Feldman does not apply to non-parties, a principle reaffirmed by the

Second Circuit in Dorce v. City of New York, 2 F.4th 82, 102 (2d Cir. 2021).

The Court's recycling of Dees v. Zurlo's Rooker-Feldman rationale to

dismiss new claims against distinct defendants engaging in post-Zurlo misconduct

is not a good-faith application of law but an institutional maneuver to shield state

actors from accountability. Federal courts retain Article III jurisdiction to grant

prospective equitable relief for ongoing federal law violations under Ex parte

Young, 209 U.S. 123, 159-60 (1908), as affirmed by the Second Circuit in Fulton

v. Goord, 591 F.3d 37, 42 (2d Cir. 2009). Hunter v. McMahon, 75 F.4th 62, 70 (2d

Cir. 2023), and Green v. Mattingly, 806 F.3d 664, 669 (2d Cir. 2015), uphold

jurisdiction over claims alleging systemic misconduct in ongoing state

proceedings, particularly for non-parties.

## D. Judicial and Quasi-Judicial Immunity Do Not Shield Fraud, Retaliation, or Actions Taken Wholly Without Jurisdiction

The District Court's reliance on judicial and quasi-judicial immunity to

dismiss Appellants' claims for injunctive relief is legally erroneous, as these

32

doctrines do not shield Defendants' actions taken in the clear absence of

jurisdiction, nonjudicial acts involving fraud and retaliation, or ongoing

constitutional violations for which prospective relief is sought.

Judicial immunity does not apply when a judge acts in the "clear absence of

all jurisdiction." Bradley v. Fisher, 80 U.S. 335, 351 (1872); Stump v. Sparkman,

435 U.S. 349, 356-57 (1978); Mireles v. Waco, 502 U.S. 9, 11–12 (1991). The

Supreme Court in Bradley distinguished between acts in "excess of jurisdiction,"

which may be immune, and those wholly without jurisdiction, which are not. The

Second Circuit in Maestri v. Jutkofsky, 860 F.2d 50, 52-53 (2d Cir. 1988), held

that a town justice issuing an arrest warrant outside his geographic jurisdiction

lacked all authority and was not immune under 42 U.S.C. § 1983. Similarly, in

Gross v. Rell, 585 F.3d 72, 82 (2d Cir. 2009), the Second Circuit clarified that

immunity protects judges only within their general subject-matter jurisdiction, not

when they assert authority they clearly lack.

Here, Defendants acted in the clear absence of jurisdiction by appointing

publicly funded counsel in a matrimonial proceeding without a required finding of

indigency. The unauthorized appointments, coupled with subsequent void acts—

bifurcation without consent, issuance of decrees without hearings, and enforcement

of fraudulent support orders—strip Defendants of immunity. **[ECF 1, ¶¶ 3, 6; ECF**

**29 at 7-8]**. The AD3's failure to remedy these violations despite notice since 2022

further confirms the jurisdictional defect. The District Court's failure to recognize this exception constitutes reversible error. **[ECF 31 ¶ 2].**

Judicial immunity protects only "judicial acts" within a judge's jurisdiction, not nonjudicial conduct such as fraud, retaliation, or administrative acts. Stump v. Sparkman, 435 U.S. 349, 360 (1978); Dennis v. Sparks, 449 U.S. 24, 27-28 (1980). The Seventh Circuit's decision in Harris v. Harvey, 605 F.2d 330, 336 (7th Cir. 1979), cited approvingly in the Second Circuit, held that a judge's retaliatory nonjudicial acts—such as defamatory statements and threatening letters—were not protected by immunity. The Second Circuit in Tucker v. Outwater, 118 F.3d 930, 933 (2d Cir. 1997), emphasized that immunity hinges on the nature of the act and the judge's jurisdictional authority. Defendants engaged in nonjudicial acts:

- Falsifying court records and expunging filings from NYSCEF to conceal misconduct. **[ECF 1, ¶¶ 2, 7; ECF 29 at 8].**

- Orchestrating fraudulent reimbursements under Titles IV-D and IV-E, misappropriating public funds. **[ECF 1, ¶¶ 6-8; ECF 29 at 8].**

- Retaliating against Appellants for exercising protected speech through baseless contempt motions and abusive courtroom conduct, including Versaci's facilitation of Dees' questioning about her unborn child's death. **[ECF 1, ¶¶ 4, 30-31; ECF 29 at 14-15, 17-19].**

These acts—administrative, conspiratorial, and retaliatory—are not judicial functions but deliberate misconduct outside the scope of immunity.

## E. Quasi-Judicial Immunity Does Not Protect Bad-Faith or Ultra Vires Conduct

Quasi-judicial immunity is not absolute and does not extend to the acts at issue here. As the Supreme Court held in Cleavinger v. Saxner, 474 U.S. 193, 199–200 (1985), quasi-judicial immunity is narrower than judicial immunity and hinges on the nature of the function performed, not the title of the actor. Immunity applies only when the actor performs adjudicatory functions within the bounds of lawful authority. The Second Circuit applied this principle in Gross v. Rell, 585 F.3d 72, 81 (2d Cir. 2009), holding that while court-appointed officials may in some circumstances be entitled to quasi-judicial immunity, such protection does not extend to acts taken ultra vires or in bad faith.

Here, the court-appointed attorneys and judicial administrators acted entirely outside their lawful authority by accepting public appointments in a matrimonial action without statutory indigency findings, suppressing evidence, and engaging in retaliatory conduct—all to perpetuate a void and fraudulent proceeding. Because these actions were neither adjudicative nor authorized by law, they fall squarely outside the scope of quasi-judicial immunity.

Quasi-judicial immunity, extending to court-appointed attorneys and administrative officials, is limited to adjudicatory functions within their authority and does not protect bad-faith or unauthorized acts. Butz v. Economou, 438 U.S. 478, 512-13 (1978). The Second Circuit in Ferrelli v. River Manor Health Care

35

Ctr., 323 F.3d 196, 203 (2d Cir. 2003), denied immunity to officials acting outside their roles or in bad faith. Defendants Mongue, Vinson, and Tobin, as court-appointed counsel, knowingly participated in a fraudulent scheme by accepting unauthorized public funds and facilitating void proceedings, despite awareness of the lack of indigency findings. **[ECF 1, ¶¶ 3, 7-8; ECF 29 at 7-8, 13-14].**

Their actions—suppressing evidence, obstructing federal discovery, and manipulating custody outcomes—were not legitimate adjudicatory functions but conspiratorial in nature, undertaken with the intent to conceal misconduct and protect illegal financial interests tied to their unauthorized appointments. These acts fall well outside the scope of quasi-judicial immunity, as they were executed in bad faith and for self-serving purposes, not in furtherance of any lawful process.

The trial transcripts confirm the deliberate and coordinated complicity of Judge Versaci and the court-appointed attorneys in shielding Ms. Smith from accountability. Their collective efforts were not directed toward the best interests of the children or the fair administration of justice but toward preserving a custody arrangement that was illegally adjudicated and sustained by three unlawfully appointed attorneys.

These defendants took no action—even as the children experienced repeated mental health crises, were chronically truant from school, and as Ms. Smith was founded by CPS for child endangerment in 2023, a finding that has been upheld

through all levels of administrative appeal. Nor did they act when Ms. Smith was criminally charged with five charges for assaulting plaintiffs in their home. Instead of advocating for the welfare of the children or enforcing the law, these defendants obstructed justice at every turn to protect Ms. Smith and the custody arrangement that had been illegally adjudicated under the supervision of three unlawfully appointed attorneys—all of whom functioned to protect Ms. Smith at the expense of the children's safety, well-being, and future.

Despite years of flagrant violations—including Ms. Smith's persistent and prolonged withholding of the children, her refusal to comply with reunification therapy orders since 2022, and her deliberate destruction of marital assets—not one of the court-appointed attorneys-initiated contempt proceedings or sought to enforce existing court orders. Rather than intervene to protect the children, whose mental health and educational needs were visibly deteriorating, these attorneys doubled down on their protection of Ms. Smith, whose continued cooperation was essential to preserving their own unlawful appointments and the steady flow of public funds through Title IV mechanisms.

This misconduct extended to their active opposition to Plaintiff's own contempt motions against Ms. Smith. Rather than support enforcement of lawful court orders, the defendants responded by defending Ms. Smith's violations and seeking dismissal of the contempt actions—further demonstrating their alignment

not with the interests of justice or child welfare, but with protecting an illegally

sustained custody arrangement designed to conceal systemic fraud and

misappropriation of state and federal resources.

This is precisely the type of ultra vires, retaliatory, and bad faith conduct that

falls outside the protection of quasi-judicial or absolute immunity. Under Butz v.

Economou, 438 U.S. 478 (1978), and Ferrelli v. River Manor Health Care Ctr., 323

F.3d 196, 203 (2d Cir. 2003). The District Court's refusal to recognize this

distinction—and its denial of discovery necessary to substantiate these grave

constitutional violations—was legal error and must be reversed.

## F. Immunity Does Not Bar Prospective Relief for Ongoing Violations

Even where immunity applies to damages claims, it does not bar prospective

injunctive relief to remedy ongoing constitutional violations. Ex parte Young, 209

U.S. 123, 159-60 (1908); Pulliam v. Allen, 466 U.S. 522, 541-42 (1984).

Appellants seek declaratory and injunctive relief to halt the void state proceedings,

enjoin retaliatory conduct, and prevent further misuse of federal funds, addressing

continuing harms such as: Deprivation of Smith's parental and driving rights and

access to his children. Falsification and expungement of court records. Retaliatory

harm to Dees, including assaults and emotional trauma from the loss of her unborn

child. And ongoing fraud through Title IV-D/E reimbursements.

These remedies are unaffected by immunity, as they target Defendants' actions under color of state law. The District Court's dismissal of Appellants' injunctive claims on immunity grounds misapplies Ex parte Young and ignores Appellants' entitlement to equitable relief. The Court's refusal to allow discovery or adjudicate the preliminary injunction motion prevented Appellants from developing evidence of fraud and retaliation, violating due process. Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864 (1988). This Court should vacate the March 24, 2025, Order and remand for adjudication by an impartial judge to ensure full examination of Defendants' misconduct.

## II.   THE DISTRICT COURT'S TEXT-ONLY TRO DENIAL AND FAILURE TO ADJUDICATE THE PRELIMINARY INJUNCTION VIOLATED RULES 65(d), 52(a), AND DUE PROCESS

The District Court's February 19, 2025, text-only denial **[ECF 12]** stated:

"Plaintiffs commenced this action on February 11, 2025, asserting various federal constitutional and statutory claims against Defendants... Plaintiffs' request for a temporary restraining order is DENIED. As noted in Plaintiffs' complaint, this matter is related to a previous case Plaintiffs brought, which the Court dismissed for a variety of reasons. Specifically, the Court found that Plaintiffs' claims were barred by the Rooker-Feldman doctrine, Younger abstention, judicial immunity, and government attorney immunity. The Court also found that Plaintiffs' claims against the court-appointed attorneys were subject to dismissal because such attorneys are not state actors under 42 U.S.C. § 1983... Here, Plaintiffs are again asking this Court to intervene in an on-going state court proceeding and have brought suit against individuals who are immune from suit. A review of Plaintiffs' complaint makes clear that they are unlikely to succeed on the merits of any of their claims and, therefore, the Court declines to grant an ex parte temporary restraining order."

This order violated the express requirements of FRCP 65(d)(1) and 52(a)(2). Rule 65(d) mandates that all injunctive rulings "state the reasons why it issued," "state its terms specifically," and "describe in reasonable detail" the acts restrained or required. Rule 52(a)(2) similarly requires courts to state the findings and conclusions supporting any ruling on injunctive relief. The Court's summary denial, relying solely on conclusory abstention and immunity language, omitted all factual findings, failed to address the Winter factors and ignored the jurisdictional and constitutional violations tied to the state proceedings that resumed March 6th. **[ECF 12; ECF 29 at 15–16]**; Winter v. NRDC, 555 U.S. 7, 20 (2008).

Such a perfunctory denial constitutes reversible error. The Supreme Court in Schmidt v. Lessard, 414 U.S. 473, 476 (1974), held that Rule 65's requirements are "no mere technical requirements," but essential to due process and appellate review. The Second Circuit has consistently vacated orders lacking reasoned analysis and specific findings. See Weitzman v. Stein, 897 F.2d 653, 658 (2d Cir. 1990); Shank v. Naes, 773 F.2d 1121, 1124 (2d Cir. 1985); Clarkson Co. v. Shaheen, 544 F.2d 624, 633 (2d Cir. 1976).

Further, the District Court never adjudicated the separately filed preliminary injunction motion. On March 24, it erroneously declared that no such motion was pending, despite the motion's explicit inclusion in the February 11, filing. The Court's silence on this issue deprived Appellants of meaningful judicial review and

40

denied them the process required under Mathews v. Eldridge, 424 U.S. 319, 333 (1976). See also Gunn v. Univ. Comm. to End War in Viet Nam, 399 U.S. 383, 388 (1970) ("[W]ithout a formal order, it is simply not possible to know with any certainty what the court has decided."); Henrietta D. v. Giuliani, 246 F.3d 176, 182 (2d Cir. 2001).

The Court's inaction allowed constitutionally void state proceedings to proceed unchecked, resulting in ongoing and irreparable harm—not only to Appellants, but to the public at large. Plaintiff incurred over $4,800 in transcript costs, suffered physical deterioration from aggravated polycythemia, and was unlawfully deprived of parental access. Co-Appellant Dees endured a delayed surgery and severe emotional trauma, including being forced to testify about the death of her unborn child. Meanwhile, state actors—lacking jurisdiction—have continued to expend public resources to perpetuate a sham trial designed not to administer justice, but to insulate themselves from federal liability.

Under Nken v. Holder, 556 U.S. 418, 434 (2009), Appellants have satisfied every prong of the injunctive standard: a strong likelihood of success on the merits; irreparable harm in the absence of relief; a balance of equities that overwhelmingly favors Appellants; and a compelling public interest in halting unlawful state action. The Supreme Court in Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 66 (2020), reaffirmed the primacy of protecting constitutional rights where

41

ongoing harm is both immediate and preventable. The District Court's refusal to

adjudicate the preliminary injunction motion was not a mere procedural

oversight—it was a structural due process violation. Vacatur is required to prevent

further abuse of state power and the continued misuse of taxpayer funds to sustain

unconstitutional proceedings.

### III.   THE SUA SPONTE DISMISSALS OF APPELLANTS' RULE 60(B) AND RECUSAL MOTIONS VIOLATED THE FEDERAL RULES, LOCAL RULES, AND DUE PROCESS

The District Court's March 24, 2025, sua sponte dismissal of Appellants'

Rule 60(b) and recusal motions, without permitting briefing or adversarial

response, violated FRCP 6(d), 7(b), Local Rule 7.1(b)(2), and fundamental due

process principles. The motions were timely filed on March 21, 2025, with

response deadlines of April 11 and reply deadlines of April 18 yet were dismissed

just three days later—without opportunity for argument, evidentiary development,

or response. **[ECF 29–31].**

The Rule 60(b) motion sought relief from orders entered February 19, March

7, and March 18, 2025, based on newly discovered evidence of fraud, mistake, and

jurisdictional voidness. Appellants introduced transcripts and documentary

evidence of Veronica Smith's tax fraud and the complicity of state actors. Foman

v. Davis, 371 U.S. 178, 182 (1962); Shrader v. CSX Transp., Inc., 70 F.3d 255,

42

257 (2d Cir. 1995) (summary denials improper where new evidence is presented);
Paddington Corp. v. Attiki Imps. & Distribs., 996 F.2d 577, 579 (2d Cir. 1993).

The recusal motion, grounded in 28 U.S.C. §§ 144 and 455, detailed Judge
D'Agostino's undisclosed relationships with key Defendants—Justice Clark,
Versaci, Garry, Fisher, Mayberger, Vinson, and Vero—as well as the professional
role of Judge Versaci's wife as NDNY Bar Executive Director. These connections
raised an objective appearance of partiality requiring recusal. Liteky v. United
States, 510 U.S. 540, 555–56 (1994); In re IBM Corp., 45 F.3d 641, 644 (2d Cir.
1995); Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864 (1988). The
District Court's conclusory denial, without factual findings or legal analysis,
violated both the statute and the public's interest in judicial integrity. LaChance v.
Erickson, 522 U.S. 262, 266 (1998).

Due process demands not only the reality but the appearance of judicial
impartiality. As the Supreme Court held in In re Murchison, 349 U.S. 133, 136
(1955), "a fair trial in a fair tribunal is a basic requirement of due process," and no
judge can be permitted to preside over a case where their impartiality might
reasonably be questioned. The record here reveals repeated and undisclosed
personal and professional connections between Judge D'Agostino, and multiple
parties and institutions involved in the litigation.

43

This appearance of impropriety was further exacerbated when Judge D'Agostino attended an April 10, 2025, New York State and Albany County BAR judicial gala as an honored guest, alongside named Defendants and representatives of defendant law firms—one of which sponsored the event. As the D.C. Circuit held in United States v. Microsoft Corp., 253 F.3d 34, 107–08 (D.C. Cir. 2001), public appearances by a judge at events hosted or attended by litigants in an active case can necessitate disqualification to preserve public confidence in judicial neutrality. Here, that standard is not only met—it is exceeded. These undisclosed affiliations and social entanglements create an impermissible risk of bias that requires disqualification under 28 U.S.C. §§ 144 and 455. To maintain the integrity of these proceedings and ensure compliance with due process, the case must be reassigned to a neutral and impartial judicial officer.

## IV.     THE DISTRICT COURT'S FAILURE TO ENFORCE RULE 26(f) OBLIGATIONS OBSTRUCTED DISCOVERY AND DENIED APPELLANTS ACCESS TO CRUCIAL EVIDENCE

The district court's February 19, text-only denial of emergency relief **[ECF 12]**, followed by its March 24, summary dismissal **[ECF 31]**, allowed unconstitutional, jurisdictionally void state proceedings to resume without opposition from defendants or adjudication of the underlying constitutional claims.

The trial was not a legitimate adjudication; it was a retaliatory proceeding orchestrated to shield named state defendants from liability in this federal action.

Judge Versaci, despite repeated challenges to his authority, forced the trial forward, denied all efforts to compel financial discovery, and obstructed Plaintiffs ability to present a defense. Subpoenas for third-party witnesses and critical financial records were denied outright. Motions to introduce rebuttal evidence were foreclosed, and time constraints were weaponized to suppress testimony.

As the Supreme Court emphasized in Hollingsworth v. Perry, 558 U.S. 183, 195 (2010), discovery is essential to uncovering evidence necessary to evaluate the merits of claims implicating individual rights and governmental conduct. In this case, where state actors are alleged to have engaged in fraud, retaliation, and abuse of judicial authority, denial of discovery forecloses the evidentiary development necessary for a fair adjudication. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978), reaffirms that the scope of discovery under Rule 26 is intentionally broad, encompassing "any matter, not privileged, that is relevant to the claim or defense of any party." This includes access to documents, communications, and institutional records that bear directly on Appellants' claims of judicial bias, unlawful public funding, and retaliatory state action.

The District Court's refusal to compel Rule 26(f) compliance and its sua sponte denial of discovery obstructed Appellants' ability to develop the record and vindicate federally protected rights. Such obstruction is not merely procedural

error—it is a structural denial of due process warranting vacatur and reassignment to an impartial tribunal.

Veronica Smith introduced no independent or verified evidence during her case-in-chief. Instead, she relied almost entirely on subpoenaed exhibits organized by Plaintiff—materials the court compelled him to disclose, only for them to be repurposed against him. Despite five years of orders, she failed to produce tax returns, W-2s, or income verification. When she finally submitted unsigned and unauthenticated tax documents on April 2, 2025—after resting her case—Versaci attempted to admit them without cross-examination, authentication, or IRS verification, in violation of due process & evidentiary standard **[ECF 29 at 17–18].**

Plaintiff Smith's defense was further suppressed under threat. Versaci made clear on March 11 that the trial would end "tomorrow," regardless of what remained unfinished **[3/11/25 Transcript, 2ⁿᵈ Cir. ECF 52]**, denying Plaintiff adequate time to present complex financial evidence. Meanwhile, Smith was suffering from polycythemia, heart issues, and other serious health conditions known to the court, which refused to grant accommodations until after he began experiencing chest pain and a rapid heartbeat—at which point relief was grudgingly allowed.

Throughout the trial Plaintiff was subjected to frequent procedural obstruction and hostility whenever he raised objections. Judge Versaci's conduct

46

displayed overt bias and deliberate manipulation at every turn, culminating in a fabricated trial engineered to reach a predetermined outcome—without lawful authority, due process, or adherence to constitutional norms. The misuse of public funds to facilitate this sham proceeding only compounds the harm. This was a state-sponsored cover-up to protect institutional actors named in federal litigation. It demands immediate federal intervention.

## V. THE CUMULATIVE STRUCTURAL FAILURES REQUIRE VACATUR AND REMAND TO AN IMPARTIAL FORUM

The District Court's cumulative procedural failures—including its text-only TRO denial, failure to adjudicate the preliminary injunction, sua sponte dismissal of Rule 60(b) and recusal motions, refusal to compel discovery, and its reliance on Dees v. Zurlo without distinguishing new evidence—constitute a systemic breakdown of due process. These are not harmless errors; they are structural and require reversal. See United States v. Olano, 507 U.S. 725, 736 (1993); Ruiz v. United States, 243 F.3d 74, 79 (2d Cir. 2001); Liljeberg, 486 U.S. at 864–65.

The continuing reliance on Dees v. Zurlo, a case marred by its own procedural and jurisdictional defects, to justify abstention and immunity in the face of new allegations and evidence, further undermines the integrity of these proceedings. The Court's failure to apply Green v. Mattingly, 477 F. App'x 849, 851 (2d Cir. 2012), and Ex parte Young, 209 U.S. 123, 155–56 (1908), to halt ongoing constitutional violations, reflects an abdication of its Article III duty.

47

Given Judge D'Agostino's conflicts and her refusal to disclose or address

them, the appearance of bias is undeniable and requires disqualification. See

Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991).

## PRAYERS FOR RELIEF

Appellants respectfully request that this Court:

1. Vacate the District Court's Summary Order of March 24, 2025 **[ECF 31]**, denying Appellants' motions for Rule 60(b) relief, preliminary injunction, and recusal.

2. Order expedited adjudication of Appellants' pending preliminary injunction motion **[ECF 1]**, to prevent ongoing irreparable harm.

3. Issue a stay and injunction enjoining all proceedings in Smith v. Smith, Index No. 2020-1227, based on lack of jurisdiction and constitutional violations.

4. Sanction the NY Attorney General's Office under Rule 11 and the Court's inherent authority for obstruction, refusal to confer, and procedural misconduct.

5. Disqualify Judge D'Agostino and reassign the matter to an impartial Article III judge, pursuant to 28 U.S.C. §§ 144 and 455.

6. Grant leave to amend the complaint to include newly discovered evidence and add additional defendants contributing to the alleged conspiracy and ongoing violations.

7. Declare the underlying state court proceedings void ab initio due to lack of jurisdiction, fraud on the court, and statutory and constitutional violations.

8. Grant such other and further relief as the Court deems just and proper.

We, Ethan D. Smith and Jennifer L. Dees, declare under penalty of perjury

under the laws of the United States that the foregoing is true and correct to the best

of our knowledge and belief.

Executed on May 19, 2025

Respectfully submitted,


Jennifer L. Dees
Sul-Juris Litigant
16 Grant Hill Rd
Clifton Park, NY 12065
Mommabearjenny@gmail.com

Ethan D. Smith
Pro-Se Litigant
16 Grant Hill Rd
Clifton Park, NY 12065
Ethan.Smith@gmail.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

Pursuant to FRAP 32(g) and Second Circuit Local Rule 32.1, I, Ethan D. Smith and Jennifer L. Dees, hereby certify that:

1. This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because it contains **[11056]** words, excluding the parts of the brief exempted by FRAP 32(f), which include the cover page, table of contents, table of authorities, and certificates of compliance and service.

2. This brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

3. The word count was obtained using Microsoft Word, which is a reliable word-processing program for determining the number of words in the document.

Dated: May 19, 2025

Jennifer L. Dees

Ethan D. Smith

50

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May 2025, I emailed to the Clerk of Court for the United States Court of Appeals for the Second Circuit, for upload to the CM/ECF system. Upon upload, notice of these filings will be electronically served upon all registered parties and counsel of record via CM/ECF.

In addition, I further certify that on this date, I caused true and correct copies of the above filings to be transmitted via U.S. Mail to the following defendant attorneys:

Denise Resta-Tobin    Tracking: **9405 5301 0935 5154 0125 12**
632 Plank Road
Suite 202
Clifton Park, NY 12065

Heather Corey Mongue    Tracking: **9405 5301 0935 5154 0125 05**
10 East High Street
Ballston Spa, NY 12020

Jessica Vinson    Tracking: **9405 5301 0935 5154 0124 99**
198 Delaware Avenue
Delmar, NY 12054

Jennifer L. Dees    Ethan D. Smith

51